182 So. 817

**TROUP, City Clerk, v. CITY OF DECATUR.**

**8 Div. 924.**

Supreme Court of Alabama.
July 26, 1938.

394

H. O. Troup, pro se.

Peach & Caddell, of Decatur, for appellee.

GARDNER, Justice.

The purpose of this litigation is to test the legality of the issuance by the city of Decatur of $312,000 of bonds of said city, as provided by ordinance number 305, duly enacted and now in full force and effect, for the purpose of refunding its outstanding bonds of that amount, to the end that the city may have the advantage of a lower rate of interest which has been offered. The history of these bonds may be briefly stated. By Amendment No. 13 to our Constitution effective November 22, 1922 (Michie's Code, 1928, page 91), the city of Albany, along with other named municipalities, was authorized to levy and collect a rate of taxation on the property situated therein, not exceeding in the total in any one year one per centum of the value of such property as assessed.

Following this amendment the city of Albany issued its bonds, referred to and fully described in ordinance No. 265, pertinent parts of which appear in the petition in this cause. Following the issuance of these bonds by the city of Albany the Legislature of Alabama on February 4, 1927, passed an Act rearranging the boundary lines of the city of Decatur so as to include within the corporate limits of Decatur all the territory

theretofore embracing the city of Albany. Local Acts 1927, page 1.

The effect of this Act was to merge the city of Albany into the city of Decatur, thus destroying "the existence of Albany as a distinct municipality, as for the ·future, and therefore to remove it from all existing statutory or constitutional provisions and automatically to make applicable thereto such provisions as relate to the city of Decatur. The city of Decatur in acquiring this territory, in legal effect, assumed all of the burdens of Albany." Such was the conclusion of the members of this Court as found in Re Opinion of the Justices, 216 Ala. 339, 113 So. 245.

The bonds issued by the city of Albany being in default, suits were brought against the city of Decatur (the merger being then in full effect) and judgments obtained, with writs of mandamus also requiring the city of Decatur to levy a tax of one per centum on all property in the territory which was formerly the city of Albany and apply the needed portion of such tax to the payment of the said judgments until they were satisfied. The city of Decatur resisted the mandamus proceeding upon the theory,· in part, that said city was limited by the Constitution to a tax levy of one half of one per centum, and that as the existence of the city of Albany was destroyed by the merger, there was no authority for the levy of the tax of one per centum.

This litigation reached the United· States Circuit Court of Appeals, Fifth Circuit, where the holding was that the rate of taxation, which a municipality was authorized to levy at the time of the issuance of the bonds, became a part of the obligation of the contract for the payment of such bonds, and that the holders of the bonds reduced to judgment can compel levy of the full authorized tax rate of the debtor municipality when necessary to enforce payment of the judgment.

The ruling of the court below authorizing the issuance of the writ was accordingly affirmed. City of Decatur v. Thames Bank & Trust Co., 84 F.2d 105.

Following this decision the city of Decatur on July 23, 1936, adopted ordinance No. 265 refunding bonds issued by the city of Albany and for the payment of which the city of Decatur had become obligated by the merger, and the judgments thereon, under the provision "Judgment Refunding Bonds Series A."

These bonds bear rates of interest from five and one-half to six per cent. The petition discloses that the city of Decatur is guaranteed that the refunding bonds, here subject to be issued, will bear a rate of interest not exceeding four and one-half per cent. To secure this advantage the city of Decatur duly enacted ordinance No. 305 for the refunding of these bonds in the sum of $312,000. But few questions are presented, all of which we consider readily answered.

It is to be noted that in the refunding bonds under ordinance No. 265, the city specifically. provided and made a definite continuing contract with the purchasers of the bonds that such purchasers were to be subrogated to all the rights and powers of the holders of the judgments being refunded.

The bonds contain provisions to like effect, and under ordinance No. 305, here under review, the city again clearly provided and contracted that the holders of the bonds issued thereunder shall be subrogated to all the rights and powers of the holders of the bonds being refunded and the judgments refunded by "Judgment Refunding Bonds Series A."

The· city of Decatur unconditionally contracts by the ordinance a continuation of the levy of the tax of one per centum upon property within the limits of what was formerly the city of Albany, and pledges itself to apply one-half of the proceeds of such tax to the payment of the bonds proposed to be issued under ordinance No. 305.

The first question relates to the authority of the city of Decatur to so covenant unconditionally. That question is answered, and we think correctly so, by the decision of the United States Circuit Court of Appeals, above cited and the authorities there noted, to the effect that it is not only the right but the duty of the city of Decatur to make the levy for the indicated purpose. Further elaboration of that question is unnecessary.

We have observed that the city of Decatur by its ordinance No. 265 specifically provided and made a definite continuing contract with the purchasers of the bonds that such purchasers were to be subrogated to all the rights and powers of the holders of the judgments being refunded. And under ordinance No. 305, the city again makes a definite contract that the holders of the bonds issued under ordinance No. 305 shall be subrogated to all the rights and powers of the holders of the bonds being refunded, and the judgments refunded by "Judgment Refund-

ing Bonds Series A." Thus it appears the matter of subrogation is not left to be ascertained by the facts and circumstances of the case (Jefferson Standard Life Ins. Co. v. Brunson, 226 Ala. 16, 145 So. 156), but the intention is made plain by express language, which cannot be misunderstood.

By the Act of 1935 (General Acts 1935, page 575), the Municipal Bond Code was amended, and in amended section 17 is the provision that "the holders of all refunding and funding bonds issued under the provisions of this Act, whether such bonds shall have been delivered in exchange for the indebtedness refunded or funded thereby, or shall have been sold and the proceeds thereof applied to the retirement of such indebtedness, shall be subrogated to all the rights and power of the holders of such indebtedness, unless otherwise expressly provided in the ordinance or resolution authorizing the issuance of such refunding or funding bonds." Section 3, p. 578.

■ The second question as to whether or not the right of the original bondholders to have the tax levied and collected was a right which could be transferred by subrogation to the holders first of the "Judgment Refunding Bonds Series A," and then to the holders of bonds to be issued under ordinance No. 305, is sufficiently answered in the affirmative by the above noted statutory provision.

The third and fourth questions relate to the right of the city of Decatur to issue its refunding bonds to refund the judgments, as it undertook to do under ordinance No. 265, without requiring the extinguishment and full satisfaction of the judgments.

■ Clearly enough, under the general rules of law, the city of Decatur had the right to enter into the covenant, as set forth in ordinance No. 265 and 305, keeping the judgments in full force and effect. Vol. 2, Freeman on Judgments, section 1129.

It was quite evident the city could not pay off the judgments rendered against it. The matter of the tax levy was one that of necessity would run over a period of years. There must be a proration and in the meantime the city would be in default. By the plan worked out by ordinance No. 265, arrangement was made whereby the city contracted to have the judgments and the writs issued thereon in full force and effect and to pay the refunding bonds issued to refund the judgments as these bonds matured, and in

this way finally to pay off the judgments. We think the city had the right to make this arrangement, and we find nothing in any of the provisions of section 17 of the Municipal Bond Code, as amended, that militates against the conclusion reached. When this amended statute is read in its entirety, we are persuaded that such arrangement is in harmony with its provisions. The intention of the city is clear and plainly expressed, and we are of the opinion the city of Decatur had the right under the law to continue the judgments in full force and effect, and that its action in refunding the judgments did not in any way effect their extinguishment.

Upon due consideration, therefore, of the several assignments of error, we conclude they are without merit, and that the plan agreed upon is well within the city's legal rights.

It results that the judgment of the trial court is due to be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J. and THOMAS and BOULDIN, JJ., concur.